**Kenny ENGLISH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 82A01–9206–CF–179.**

Court of Appeals of Indiana,
First District.

Nov. 16, 1992.

---

3. The judgment upon Brunner's counterclaim was not appealed. It is therefore not disturbed.

Mark A. Foster, Evansville, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

BAKER, Judge.

Defendant-appellant Kenny English was convicted of operating a motor vehicle with a blood alcohol content (BAC) of .10% or greater, a class C misdemeanor.[1] His appeal challenges the validity of his arrest, the admissibility of the breath test result, and the sufficiency of the evidence.

We affirm.

## STATEMENT OF FACTS

The facts most favorable to the judgment reveal that on December 26, 1991, at approximately 8:45 p.m., English left a neighborhood tavern in his new car after drinking six or seven beers. The car's temporary tag had fallen from the back window and was not readily visible.

At approximately 9:27 p.m., Indiana State Police officer John Campbell saw that English's car did not have a properly displayed license plate, stopped him, and asked to see his driver's license and registration. After noticing English's bloodshot eyes and smelling alcohol on his breath, Officer Campbell asked English to perform four field sobriety tests; English agreed and subsequently failed each test. Thereafter, Officer Campbell, a certified breath test operator, took English to the state police post, informed him of the implied consent law,[2] and, at 10:05 p.m., administered a breath test to English using a certified BAC DataMaster machine. The test revealed English's BAC was .10%.

English was arrested and charged with operating a vehicle with a BAC of .10% or greater. Following a bench trial, the trial court found English guilty, imposed a 60-day suspended sentence, and fined him $100.00. This appeal ensued.

## DISCUSSION AND DECISION

### A. Probable Cause

English first argues Officer Campbell lacked sufficient probable cause to stop his car. He contends the officer saw English's registration tag after stopping his car but before confronting English and therefore all subsequent evidence should have been suppressed as the fruit of an unlawful arrest.

1. IND.CODE 9–30–5–1.

2. IND.CODE 9–30–6–1.

IND.CODE 34–4–32–2 permits an officer to briefly detain a person whom the officer in good faith believes has committed an infraction or ordinance violation in order to obtain basic information and allow the person to execute a notice to appear. Officer Campbell testified that he saw English driving without a properly displayed license plate, a Class C infraction.[3] Given this provision, Officer Campbell had probable cause to stop English's car and investigate further. The fact that the officer saw English's registration tag before reaching the driver's side window is of no moment because the tag was still not properly displayed. Moreover, even if we accept English's contention that the registration tag was properly displayed, the stop would still have been reasonable because Officer Campbell proceeded based upon a good faith belief that English had committed an infraction. Accordingly, the officer acted properly when he asked to see English's driver's license and registration. The trial court did not err in refusing to exclude evidence of English's intoxication on the grounds English was improperly stopped.

### B. Breath Test Evidence

■ English next attacks the admission of the State's exhibits 1 through 3, which were offered to establish certification of the breath test operator, the BAC Data-Master breath test machine, and the test result, respectively.

■ For the results of a breathalyzer test to be admissible, three foundational elements must be demonstrated:

1) that the test was administered by an operator certified by the State Department of Toxicology;

2) that the equipment used in the test was inspected and approved by the State Department of Toxicology; and

3) that the operator used techniques approved by the State Department of Toxicology.

IND.CODE 9–30–6–5(d); *Oller v. State* (1984), Ind.App., 469 N.E.2d 1227, 1230. In laying the foundation for the admission of the breathalyzer evidence, the State offered Exhibit 1, a certified letter identifying Campbell as a certified breath test operator, and Exhibit 2, a certified document showing that the equipment used had been inspected and tested on October 2, 1991. In addition, the State offered Campbell's testimony that he had followed the Department of Toxicology's testing procedure. *Record* at 56.

■ On appeal, English argues Exhibit 1 was not created until after he took the breath test, and that none of the three State's exhibits were timely filed with the clerk of Vanderburgh County. English admits the State's failure to timely file the exhibits does not invalidate the test; instead, he argues their untimely filing prevents their use as prima facie evidence pursuant to Ind.Code 9–30–6–5(c)[4] and thus the State must prove the validity of the breathalyzer test by other means. We disagree. There is no requirement that the county clerk have the documentation on file at the time of arrest or testing or that an officer possess the certification on his person at either time in order to use the test results at trial. Further, "the failure to file a certificate does not invalidate any tests performed." *Oller, supra,* at 1231; IND.CODE 9–30–6–5. Here, Exhibit 1 shows Officer Campbell was recertified to administer breath tests for two years in July, 1991, and Exhibit 2 reveals the Data-Master machine was inspected on October 2, 1991, 85 days before English's test. Clearly, Officer Campbell was properly certified and the machine properly inspected

---

3. IND.CODE 9–18–2–40.

4. Ind.Code 9–30–6–5(c) provides in pertinent part:
   (c) Certified copies of certificates . . . :
      (2) Constitute prima facie evidence that the equipment or chemical:
         (A) Was inspected and approved by the Department of Toxicology on the date specified on the certified copy; and
         (B) Was in proper working condition on the date the breath test was administered if the date of approval is not more than 180 days before the date of the breath test;
      (3) Constitute prima facie evidence of the approved technique for administering a breath test.

at the time of English's breath test. The trial court did not err in admitting these exhibits. *See Oller, supra* (no error to admit breathalyzer test result although certificate verifying inspection of machine was not filed until four days after defendant's breath test).

■ Finally, English challenges the admission of Exhibit 3, a photocopy of his test results. Initially, he argues for the first time on appeal that this exhibit was never offered into evidence by the State. Because English failed to raise this issue at trial, it is waived. *Brown v. State* (1992), Ind.App., 587 N.E.2d 693, 703.

■ English also argues the clerk of Vanderburgh County incorrectly certified Exhibit 3 as a "breathalyzer" result, a term of art used to describe the Smith and Wesson Breathalyzer, not the DataMaster machine used in this case. English, however, does not dispute that the product of each machine is the same; both machines print out the BAC of the test subject. Thus, we find no reversible error. Moreover, because Campbell testified as to the test results without objection, *record* at 69, the demonstrative evidence is cumulative. Reversible error cannot be predicated upon a trial court's admission of evidence which is merely cumulative. *Corbin v. State* (1990), Ind., 563 N.E.2d 86, 93. The trial court did not err.

### C. Sufficiency of the Evidence

■ English next asserts the evidence is insufficient to sustain his conviction. When reviewing the sufficiency of the evidence, this court will consider only the evidence favorable to the judgment, together with all reasonable and logical inferences to be drawn therefrom. *Henriott v. State* (1990), Ind.App., 562 N.E.2d 1325, 1326. We neither reweigh the evidence nor reassess the credibility of the witnesses. *Id.* If there is substantial evidence of probative value, the verdict will not be disturbed on sufficiency grounds. *Id.*

■ First, English argues the evidence insufficiently establishes his BAC at the time he was operating the vehicle. *Appellant's Brief* at 10-11. We disagree. In *Platt v. State* (1992), Ind., 589 N.E.2d 222, Platt contended that the State failed to prove his BAC at the time he was driving. Our supreme court rejected his argument, stating:

> The statutes clearly establish a presumption that a person charged with drunken driving had at least .10% BAC when he was driving, provided (1) the person's BAC was at least .10% when the test was conducted and (2) the test was performed within three hours after the officer had probable cause to believe the person committed the offense. The presumption, however, is rebuttable.

*Id.* at 228.

Here, Campbell stopped English at 9:27 p.m. and administered the breath test to him at 10:05 p.m., approximately 45 minutes later. English's BAC was .10% at 10:05 p.m. Because the test was performed within three hours after probable cause arose, the trial court properly presumed that English's BAC was at least .10% when he was driving. English failed to present any evidence to the contrary; therefore, the presumption remained unrebutted, and permitted the trial court to reasonably find that English operated his car with a BAC of .10% or greater.

■ English next argues there is no evidence that he "intentionally, knowingly, or recklessly" operated a vehicle with a BAC of .10% or greater in violation of IND. CODE 9-30-5-1. *Appellant's Brief* at 11. Although IND.CODE 9-30-5-1 does not explicitly provide the requisite mental state,[5] we note that operating a vehicle with a BAC of .10% or greater is a lesser-included offense of operating a vehicle while intoxicated,[6] which itself has been held lacks a mens rea element. *Sering v. State* (1986), Ind.App., 488 N.E.2d 369, 376; *Burns v.*

---

**5.** IND.CODE 9-30-5-1 provides:

(a) A person who operates a vehicle with at least ten-hundreths percent (.10%) by weight of alcohol in the person's blood commits a Class C misdemeanor.

**6.** IND.CODE 9-30-5-2.

*State* (1990), Ind.App., 556 N.E.2d 955, 958; *Zachary v. State* (1984), Ind., 469 N.E.2d 744, 749. If the greater offense requires no mens rea, as a matter of logic the lesser-included offense requires none. The State need only show English operated his vehicle with a BAC of .10% or greater, which it did. There was no error.[7]

RATLIFF, Senior Judge, and MILLER, J., concur.

---

**7.** We note our result comports with the test annunciated in *State v. Keihn* (1989), Ind., 542 N.E.2d 963, 967, wherein our supreme court identified several factors "considered of importance in deciding whether the legislature meant to impose liability without fault or, on the other hand, really meant to require fault, though it failed to spell it out clearly." *Id.* (citation omitted). First, our review of neighboring jurisdictions supports our conclusion that mens rea need not be proven to support a conviction for operating a vehicle with a BAC of .10% or greater. *See e.g. State v. Grimsley* (1982), Ohio App., 3 Ohio App.3d 265, 444 N.E.2d 1071 ("The act of driving a vehicle while under the influence of alcohol is a voluntary act in the eyes of the law, and the duty to refrain from doing so is one that in the interests of public safety must be enforced by strict criminal liability without the necessity of proving a culpable state of mind"); *People v. Thornson* (1986), Ill.App., 145 Ill. App.3d 764, 99 Ill.Dec. 729, 496 N.E.2d 304 ("Driving with a BAC of .10% is a strict liability offense, and the State must prove only that the defendant was operating a vehicle and had a BAC of over .10%"). Second, increasingly severe criminal sanctions reflect our society's deep concern with the dangers associated with drunk driving; accordingly, we will not hinder the State's ability to prosecute alcohol offenders by imposing a heavier standard of proof. Finally, English has not alleged that he was forced to drink alcohol against his will or that an emergency arose forcing him to drive while intoxicated; therefore, we presume that he had the ability to avoid the prohibited conduct, but chose not to do so.