**Joshua BEAN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0810–CR–906.**

Court of Appeals of Indiana.

Sept. 9, 2009.

Transfer Denied Oct. 29, 2009.

---

Ellen M. O'Connor, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Joshua Bean appeals his convictions for Murder, a felony, and Abuse of a Corpse, a Class D felony, following a jury trial. Bean presents the following issues for review:

1. Whether the trial court abused its discretion when it admitted Bean's custodial statement to police.

2. Whether the trial court abused its discretion when it admitted certain evidence under Indiana Evidence Rule 404(b).

We affirm.

### FACTS AND PROCEDURAL HISTORY

Bean and Heather Norris began dating in 2005. At the time, Norris was a high school senior, and Bean was a student at I.U.P.U.I. Norris moved to Bloomington and attended Indiana University that fall. Over the Thanksgiving weekend, Norris and her friend, Erin Weisbach, were home from college for the holiday. Norris phoned Weisbach, crying hysterically. Weisbach met Norris ten minutes after the call and found Norris still hysterical, with a scratch on her eye and red finger marks on her neck. When Norris calmed down, she told Weisbach that Bean had hit her in the stomach and had put her in a headlock at the home of Bean's father. Norris said that Bean's father had intervened and that the police had been called. The couple broke up in November.

Bean and Norris reconciled on Valentine's Day in 2006 when Bean visited Norris in Bloomington with a gift of flowers. Thereafter, Norris spent an increasing amount of time with Bean in Indianapolis. She eventually withdrew from classes in

April 2006. Sometime during November 2006, Hazel Risch found Norris, a stranger to her, on Risch's front doorstep on South Meridian Street in Indianapolis. Norris said that her boyfriend had thrown her and her belongings out of the car. Risch noticed that Norris' arms were scraped and bleeding. Norris asked to use the phone to call her mother for a ride, and Risch gave her the phone. Norris' mother, Deborah Norris, arrived shortly after the call and picked Norris up at Risch's home. Bean and Norris broke up again in November 2006.

On August 2, 2006, Norris filed a complaint against Bean, alleging domestic battery and battery, both as Class A misdemeanors in Cause Number 49G16–0607–CM–141129 ("Case No. 141129"). And on December 8, 2006, Norris again pressed charges against Bean, alleging domestic battery, battery, and invasion of privacy, as Class A misdemeanors ("Case No. 232937"), for events that occurred on October 29 or 30, 2006.[1] On December 18, in Case No. 141129, the court granted the State's motion to dismiss one charge and, following an evidentiary hearing, granted Bean's motion for judgment on the evidence on the other charge. That same day, Bean was apprised of the charges filed by Norris in Case No. 232937.

In early April 2007, Norris stopped returning phone calls from family and friends. On April 11, Bean missed an important 9:00 a.m. meeting at his place of employment. His supervisor phoned Bean at 9:15, leaving a message, and Bean replied by email at 9:30. In the email, Bean stated that he was sick and could not come to work. Bean then phoned the director of the company between 11:30 a.m. and 12:30

p.m. When the director did not answer, Bean left a message stating that he had been attacked by two individuals, had just seen a doctor to receive stitches, and had a doctor's note excusing him from work for the remainder of the week.

On April 11 at 12:39, Bean sought treatment from a doctor at an urgent care clinic for cuts on his hands and arm.[2] Bean told the doctor and clinic staff that he had cut himself when a trash bag containing beer bottles broke and "broken beer bottles came down on his hands and arm." Transcript at 225. Bean received twenty-five stitches for cuts to his fingers and forearm. On April 12, Bean purchased a chainsaw, a cotton mop, a "change utility knife," and black trash bags at a hardware store, and he rented a Rug Doctor Cleaner and bought carpet-cleaning solution.

In early to mid-April, Bean told family and friends that he and Norris had broken up. In mid- to late April, the sister of one of Bean's neighbors saw Bean drive away in Norris' car while wearing blue latex gloves. Around the same time, Bean worked on his home, painting and replacing carpet in the basement. He also purchased cleaning materials, and he rented a truck and took trash in bags to various dumpsters.

On April 25, Norris' mother filed a missing persons report. On May 8, an officer from the Indianapolis Metropolitan Police Department ("IMPD") located Norris' car at a hotel on the west side of Indianapolis. Also in May, Bean and his friend David Dawson vacationed in Mexico. While there, Bean confessed to Dawson that he had killed Norris at his home, then cut up the remains with a chainsaw and deposited them in trash bags in various dumpsters.

---

1. The charging informations list the date of the offenses as "October 29, 30." Exhibit 124.

2. The record on appeal does not specify whether the time was early morning or shortly after noon.

On May 24, in the missing persons investigation, officers executed a search warrant on Bean's residence. The search disclosed the presence of human remains. Also on May 24, after learning that police wished to talk to him, Bean left a message with the police department that any questions to him should be directed to his attorney. On May 26, Bean's father and uncle reported to IMPD that Bean had disclosed to them that he had killed Norris then burned, dismembered, and disposed of her body. The missing persons case became a murder investigation and, that evening, officers arrested Bean at the home of his cousin.

Following the arrest, Detectives Lesia Moore and Todd Lappin questioned Bean at the IMPD homicide office. After being advised of his rights, Bean signed a form waiving them. After one of the detectives activated a tape recorder, Bean was again apprised of and waived his rights. Bean then told officers that Norris had been staying with him on April 10 when they began to argue, and he had stabbed Norris several times with a steak knife in his basement. He further stated that he had burned her body in the basement in a trash can and then had cut the body into several pieces. He had placed the body parts in approximately ten trash bags and had deposited the trash bags in various dumpsters on the south side of Indianapolis. Bean also had cleaned the laundry room area with bleach, painted with black paint the walls of the basement stairway and the basement bathroom, and hired someone to replace the carpet on the basement stairs. Bean's father and uncle were present for part of the interview.

On May 31, 2007, the State charged Bean with murder and abuse of a corpse. On November 27, Bean filed a Request by Accused of State's Intent to Offer 404(b) Evidence. On November 30, the State filed its "Notice of Intent to Use [Evidence Rule] 404(b) Evidence [of] Heather Norris Relationship." Appellant's App. at 127. On January 31, 2008, the State filed another "Notice of Intent to Offer Evidence Pursuant to I.R.E. 404(b)." *Id.* at 173. On February 1, Bean filed his Motion to Suppress Statement, opposing the admission of his May 26 statement to IMPD detectives. The State filed a memorandum in opposition to Bean's motion to suppress the statement.

On February 21, the court held an evidentiary hearing on pending motions. On March 14, Bean filed a memorandum in opposition to the State's intent to use Rule 404(b) evidence, and the State filed its memorandum of law in support. On May 28, the court entered its Order on State's Notices of Intent to Offer Evidence Rule 404(b) Evidence, granting the State's motions as to the following evidence: the November 2005 choking incident; information regarding a domestic battery and invasion of privacy case brought by Norris against Bean, including the Chronological Case Summary;[3] a November 2006 incident in which Norris said that Bean threw her out of his car; and Bean's statement to Dawson that he and Norris "had gotten into an argument and that she had threatened to call the police to report that he was growing marijuana in his basement, that he had struggled with her over a knife and had slit her throat." Id at 273. On March 28, the court denied Bean's motion

---

**3.** Bean alleges that the trial court should not have admitted the "[f]act of a pending criminal case, Cause No. 49G1616060607CM1411129 [sic], charging Joshua Bean with Domestic Battery; Battery, and Invasion of Privacy[.]" Appellant's Brief at 21. But the charges in Case No. 141129 had been disposed of on December 18, 2006. Case No. 232937 was the only case pending at the time of the murder trial.

to suppress his statements to police on May 26, 2007.

The State tried Bean before a jury on August 4 through 8, 2008. The trial court admitted some of the Evidence Rule 404(b) evidence over Bean's objection and admitted other such evidence without objection. At the close of trial, the jury found Bean guilty as charged. On September 5, the court sentenced Bean to sixty-five years for murder and three years for abuse of a corpse, to be served consecutively. Bean now appeals.

## DISCUSSION AND DECISION

### Issue One: Admission of Custodial Statement

Bean contends that the trial court abused its discretion when it admitted into evidence statements he had made to IMPD detectives following his arrest. In particular, he argues that his statement was not voluntary because he had ingested alcohol and Xanax before the interview. He also argues that his statement should not have been admitted because his request for counsel during the custodial interview was ignored. We address each contention in turn.

### Voluntariness of Statement

■ A trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of an abuse of discretion. *Bentley v. State*, 846 N.E.2d 300, 304 (Ind.Ct.App.2006), *trans. denied*. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* The State has the burden to prove by a preponderance of the evidence that a defendant's statement was voluntary. *Wells v. State*, 904 N.E.2d 265, 271 (Ind.Ct.App. 2009), *trans. denied*. "In evaluating a claim that a statement was not given vol-

untarily, the trial court is to consider the totality of the circumstances, including the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health." *Id.* Conflicting evidence is viewed most favorably to the trial court's ruling. *McGhee v. State*, 899 N.E.2d 35, 37–38 (Ind.Ct.App.2008), *trans. denied*.

■ Bean contends that his custodial statement was not voluntary because he was "suffering the after effects [sic] and shock of Heather Norris' violent death and his actions in disposing of her body." Appellant's Brief at 16. Aside from the confession inherent in that statement, Bean cites no law in support of his contention that stress or shock arising from the nature of the crime, or from having committed the crime, renders a custodial statement involuntary. As such, the argument is waived.

■ Bean also argues that his statement to Detectives Lappin and Moore was not voluntary because he was under the influence of alcohol and Xanax at the time of his custodial interrogation. Specifically, he avers that he had ingested "four to six shots of [Jaegermeister] and three to four pills of Xanax" about an hour before he talked to the detectives. But a confession may be given knowingly and voluntarily, notwithstanding voluntary intoxication. *Ellis v. State*, 707 N.E.2d 797, 802 (Ind. 1999) (citation omitted). This Court will deem a defendant's statement incompetent only when he is so intoxicated that it renders him not conscious of what he is doing or produces a state of mania. *Id.* (citations omitted). Intoxication to a lesser degree goes only to the weight to be given to the statement and not its admissibility. *Id.* Bean has pointed to no evidence to show that he was not conscious of what he

was doing or that he was in a state of mania during his custodial interrogation.

■ A review of the totality of the circumstances supports the conclusion that Bean's statement was voluntarily made. Bean does not argue that officers coerced him to make a statement. Bean was taken into custody at 6:24 p.m., and he signed the waiver of rights at 8:13 p.m. The interview began at the police department and concluded after midnight, after Bean had accompanied officers to his home and to the various dumpsters where he had disposed of Norris' body.

Aside from the arguments addressed above, Bean argues that he was "only 23 years [old] and unfamiliar with police interrogation procedures[.]" Appellant's Brief at 16. Such professed ignorance is hardly grounds to suppress an otherwise lawful confession. The record also shows that Norris had twice filed complaints against him and that Bean had been tried on one of those complaints. He was not completely unfamiliar with police procedures. And as to Bean's physical and mental state, again, Bean's "shock" at the nature of the crimes was of his own making. Moreover, he was college-educated, lived in his own home, had previously maintained well-paying professional employment, appeared balanced and sober, and showed no signs of illness or fatigue. In light of the totality of circumstances, we cannot say that the trial court abused its discretion in finding that Bean's statement to police detectives was voluntary and, therefore, in admitting that statement into evidence.

### Request for Counsel

■ Bean also contends that his custodial statement should not have been admitted in evidence because he was denied his right to counsel under the Fifth Amendment to the United States Constitution. In particular, Bean asserts that he made an unequivocal request for counsel during the custodial interview and, because the detectives did not provide counsel and continued to question Bean following that request, his statement should not have been admitted at trial.[4] We cannot agree.

Again, we review the admission of evidence at trial for an abuse of discretion. *Bentley*, 846 N.E.2d at 304. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* Conflicting evidence is viewed most favorably to the trial court's ruling. *McGhee*, 899 N.E.2d at 37–38.

■ Under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), any person in custody has the right to have counsel present (or even appointed) prior to and during interrogation. Invocation of the *Miranda* right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney. *Cox v. State*, 854 N.E.2d 1187, 1194 (Ind.Ct.App.2006) (citations omitted). In contrast, if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, cessation of questioning is not required. *Id.* (citing *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994)). When confronted with an ambiguous request for counsel, police are not required to ask clarifying questions. *Smith v.*

---

4. Bean presents the argument in terms of whether his statement should have been suppressed. Because he is appealing following his conviction, the issue is more appropriately framed as whether the statement should have been admitted at trial. *Bentley*, 846 N.E.2d at 304.

*State,* 718 N.E.2d 794, 804 (Ind.Ct.App. 1999), (citing *Taylor v. State,* 689 N.E.2d 699, 703 (Ind.1997)), *trans. denied.*

In *Smith,* officers questioned Smith about the death of her daughter after the officers had read Smith her *Miranda* rights and Smith had signed a waiver of rights form. During the interview, Smith stated, "Do I need a lawyer for something?" and "Well, I don't really understand what you guys are doing ... why do I need one?" *Id.* at 804. Following her conviction for neglect of a dependent resulting in serious bodily injury, Smith argued that the trial court should not have admitted her custodial statement to police because she had not voluntarily relinquished her right to remain silent. We held that the court had not abused its discretion in admitting Smith's custodial statement because her statements regarding an attorney were too equivocal to constitute an unambiguous request for counsel. *Id.* at 805.

Similarly, in *Collins v. State,* 873 N.E.2d 149, 156 (Ind.Ct.App.2007), *trans. denied,* Collins asked during his custodial interview, "Do I need an attorney?" and then later observed, "I probably need an attorney." *Id.* Again, we held:

> Neither of these utterances amounts to an unequivocal request for an attorney. The first is merely a question. The second is merely an observation, rendered equivocal by Collins's use of the word "probably." Had Collins said, "I definitely need an attorney" or "I need an attorney, now," our conclusion might well be different, but he said neither of those things. As it was, Collins's statement does not rise to the level of clarity such that a reasonable officer would understand it to be a request for an attorney.

*Id.*

Here, Detectives Moore and Lappin interviewed Bean at the IMPD homicide office. The detectives questioned Bean in the presence of his father and uncle. Bean contends that, "[a]fter signing the rights waiver but at the onset of the interrogation, [he] asked for an attorney." Appellant's Brief at 18. Bean testified that he asked, "What about an attorney?" Transcript at 1150. Bean's father testified that Bean asked, "Do I need an attorney?" *Id.* at 1166. And Bean's uncle testified that Bean asked "shouldn't I have an attorney?" *Id.* at 1168. The detectives testified that Bean never mentioned or requested an attorney.

The trial court implicitly found that Bean's statement "What about an attorney" was not an unequivocal request for counsel. We agree. Regardless of which of the questions above Bean may have used when talking about an attorney, none of these statements rises to the level of clarity that a reasonable officer would understand to be a request for an attorney. *See Collins,* 873 N.E.2d at 156. Thus, the officers were not required to cease questioning after Bean's alleged request for an attorney. As a result, the trial court did not abuse its discretion when it admitted Bean's confession into evidence at trial.

### Issue Two: Evidence Rule 404(b)

Bean next contends that the trial court abused its discretion when it admitted certain evidence at trial. He states that evidence regarding Bean's choking of Norris in November 2005, a November 2006 incident where Norris said Bean had thrown her out of the car, a domestic battery and invasion of privacy case from 2006, and Bean's confession to Dawson while on vacation in Mexico should not have been admitted under Indiana Evidence Rule 404(b).

We initially observe that Bean has not provided citations in the argument section

of his brief to show where in the record we might review the admission of evidence regarding the November 2005 choking incident, the November 2006 incident in which Norris told Hazel Risch and Norris' mother that Bean had left Norris stranded in front of Risch's house after throwing her out of the car, or Norris' December 2006 domestic battery and invasion of privacy charges against Bean. Such citations to the record are required under Indiana Appellate Rule 46(A)(8)(a), and the failure to include such citations can result in waiver. Nevertheless, we consider Bean's argument with regard to this evidence below.

### November 2005 Choking

■ Norris' childhood friend, Erin Weisbach, testified that Norris had called her in November 2005, very upset. When Weisbach saw Norris ten minutes later, Norris had a scratch on her eye and red finger marks on her neck. Weisbach further testified that Norris said Bean had hit her in the stomach and choked her and that Bean's father had intervened. Bean contends that this evidence is not sufficiently related to the current offense to be relevant. Bean filed a pre-trial pleading opposing the admission of that evidence at trial, but he did not make a contemporaneous objection to the admission of that evidence at trial. As such, he has waived the error. *See McCarthy v. State,* 749 N.E.2d 528, 537 (Ind.2001) (failure to object at trial to the admission of the evidence results in wavier of the error).

### November 2006 Car Incident

■ Bean next contends that the trial court should not have admitted evidence that Bean had thrown her out of the car. Specifically, Bean argues that the incident "is not sufficiently similar to be relevant" because it "rel[ies] upon hearsay testimony of Heath[er] Norris as to her state of mind." Appellant's Brief at 23. Bean maintains that this evidence was not relevant because it showed Bean in "a moment of fury" becoming angry with Norris, whereas here Norris attacked Bean with a steak knife, *Id.*

Bean has not preserved the error for review. Risch testified that in November 2006 she was alerted to a person at her front door and noticed a dark car speeding out of her long, gravel driveway:

Q: What was drawing your attention to the person at your front door then?

A: She seemed to be upset. As I'm opening the door, she's saying to me, "Can I use your phone to call my mom?" The next words were, "My boyfriend threw me out of the car."

Q: And would you describe her demeanor at that point?

A: She was crying. She wasn't hysterically sobbing or anything like that. But she was crying. She was definitely upset.

Q: And what else was said at that point after she said, "My boyfriend threw me out of the car?" [sic]

A: Basically she was just wanting to call her mother.

Q: Did you allow that?

A: Yes, I did.

Q: Did you know this woman?

A: No, I did not.

Q: Was she a total stranger?

A: Yes, she was.

Q: Did you let her in your house?

A: Yes, I did.

Q: Why?

A: She was upset. I'm a mother. And I also happen to have a daughter who is an older daughter. She's married. But I would like to think that if my daughter had gone to someone's house asking to use their

phone that they would let her in and let her use the phone. With being on the street that I'm on [South Meridian Street, Indianapolis], lots of people come to my door and want to use my phone. Maybe they'll run out of gas, they've got car trouble, there's been accidents. Normally what I do is I get the phone, I hand them the phone. In this case, because it was a young girl and she seemed to be very upset and was asking to call her mother, I did let her in my house.

Q: And did you in fact provide your phone to this young woman?

A: Yes, I did.

Q: And presuming you are not meaning to eavesdrop, did you hear any portion of that conversation by the young woman?

A: Yes. Again, I heard her say that, in this case I heard a name.

[Defense counsel]: Your Honor, we're, we're going to object for the reasons we previously stated, for the record.

The Court: Show the objection noted and overruled.

Q: You can go ahead, ma'am.

A: Okay. She mentioned that Josh had thrown her out of the car. . . .

Transcript at 139–41.

On appeal, Bean appears to argue that the court abused its discretion by admitting evidence regarding Norris' appearance on Risch's doorstep and the reason Norris gave for being there. But Bean did not preserve that issue for review because he did not lodge a timely objection to testimony regarding Norris' statements to Risch. Bean did not object until the question posed regarded the identity of the person who had abandoned Norris at Risch's home. Thus, his objection was not timely. *See Robinson v. State,* 730 N.E.2d 185, 192–92 (Ind.Ct.App.2000) ("To preserve a suppression claim a defendant must make a contemporaneous objection that is sufficiently specific to alert the trial judge fully of the legal issue."), *trans. denied.* As such, he has waived the error, if any, regarding the admission of Risch's testimony that Norris said someone had thrown her out of the car.

 To the extent Bean is appealing the admission of evidence that Norris identified him as the person who threw her out of the car at Risch's driveway, Bean again has not shown that he preserved that issue for review. The transcript shows that Bean objected "for the reasons [he] previously stated, for the record." Transcript at 141. But Bean has not directed us to the point in the record where we might find the basis given for his earlier objections. Thus, that error, if any, is also waived. *See Robinson,* 730 N.E.2d at 193 ("When a defendant fails to object to the introduction of evidence, makes only a general objection, or objects only on *other* grounds, the defendant waives the suppression claim.") (emphasis original).

### December 2006 Domestic Battery Charge[5]

 Bean also contends that the trial court abused its discretion when it admitted evidence showing that criminal charges were pending against him. Bean's argument in its entirety provides:

> While there is testimony that Joshua Bean was bitter about being drug

5. Bean refers to this domestic battery case as a "November/December 2006 incident." Again, the Chronological Case Summary for Case No. 232937 is based on offenses that allegedly occurred on October 29 or 30, 2006, and the State filed the charging informations in that case on December 8, 2006.

through domestic court, having to stay away, [having to] pay money to an attorney, and attend[ing] court hearings, allowing the jury to know the fact that he had pending criminal charges was more prejudicial tha[n] probative.

The jury could have easily speculated that Joshua Bean was guilty of another crime against Heather Norris and thus guilty of her murder. Getting out from under that case was not a motive to kill her. He did not have to kill her. Joshua Bean was being nice to her so that she would not appear in court and the case would be dismissed. Moreover, he was acquitted of the last charge. If he could go to trial and win based upon her lack of credibility, he had no need to do otherwise. The trial court abused its discretion in allowing these allegations.

Appellant's Brief at 23–24. But Bean does not support his argument with any citations to authority in support of his argument. As such, again, the argument is waived. *See* Ind.App. R. 46(A)(8)(a). And, in any event, the error, if any, in the admission of that evidence was harmless. At trial, Bean objected to the admission of the Chronological Case Summary ("CCS") in the pending domestic violence case only to the extent the CCS showed entries beyond April 2007. The fact that that domestic battery case was still pending at the time of the murder trial had already been admitted into evidence through testimony by Norris' mother. Bean's argument must fail. *See* App. R. 66(A).

### Confession to Friend

■ Bean contends that the trial court should not have admitted the testimony of Dawson, his childhood friend, that Bean had confessed to killing Norris. Bean argues first that he and Dawson "had been intoxicated when they spoke, and he was uncertain of everything." Appellant's Brief at 24. But Bean does not explain

that argument further, nor does he support the argument with citation to supporting law or to the record. As such, the argument is waived.

■ Bean also argues that Dawson's testimony regarding Bean's confession should not have been admitted because

the motive the State argued for the relevance of the other instances was the relationship and hostility of the parties. Here, the State argued Joshua Bean killed Heather Norris to prevent her from calling 911 and turning him in for violating his 'no contact order and for growing marijuana.['] The State was engaged in motive shopping. The State wanted to convict Joshua Bean on jealousy and anger or evading arrest or bad character. It is an abuse of discretion to allow a laundry list of 404(b) evidence aimed, not at legal relevance, but at prejudicing Joshua Bean.

*Id.*

Bean bases his argument regarding the admission of his confession to Dawson on Evidence Rule 404(b). But that rule prohibits the admission of evidence of "other crimes, wrongs, or acts ... to show action in conformity therewith." Ind. Evid. R. 404(b). The testimony at issue refers to Bean's confession to the crime charged, not other crimes, wrongs, or acts. Therefore, Rule 404(b) has no application here.

■ Additionally, Bean did not preserve that error by objecting at trial to the admission of Dawson's testimony under Evidence Rule 404(b). Our review of the record shows that Bean objected on various grounds, such as to vagueness or uncertainty in Dawson's testimony, but not to the prejudicial nature of that testimony. In any event, outside the hearing of the jury, counsel for both parties agreed that Dawson could testify without objection to

the following statements Bean had made to Dawson in Mexico in May 2007: (1) that on the morning of the murder Norris had entered 9–1–1 in the phone and threatened to call the police to report either that Bean had violated a no contact order or that he was growing marijuana; (2) that there was a knife struggle between Norris and Bean; (3) that after Norris died, Bean put her body in the laundry room; (4) that Bean had then cut up Norris' body and put it in trash bags and then put the trash bags in various dumpsters; (5) that Norris' last words were 'I love you, Josh;' and (6) that Dawson had visited Bean at home unannounced in April 2007 and had noticed an unusual odor in the basement, that the carpet on the basement stairs was gone, that Bean had told him that someone started a fire in a trash can with a cigarette, and that a few days later Dawson saw new black carpet on the basement stairs.

Bean's argument regarding any error in the admission of Dawson's testimony is completely unfounded in the record. A review of the record shows that he did not object to the admission of Dawson's testimony about Bean's confession. And, in any event, the admission of Dawson's testimony was merely cumulative to Bean's custodial statement to police, which we have already determined was properly admitted into evidence. Bean's argument is without merit.

Affirmed.

KIRSCH, J., and BARNES, J., concur.