**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

FILED
Dec 07 2012, 9:30 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRENDA VARO, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1203-CR-144 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-1104-FB-25422

**December 7, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Brenda Varo appeals her convictions for conspiracy to commit battery, as a Class C felony, and criminal gang activity, as a Class D felony, following a jury trial. She presents four issues for review, which we restate as:

1. Whether the evidence is sufficient to support her convictions.

2. Whether the trial court erred in instructing the jury on conspiracy to commit battery and when it refused to instruct the jury on aiding and abetting in the offenses.

3. Whether the trial court erred when it allowed a police officer to testify regarding Varo's membership in a gang and when it admitted into evidence a demonstrative exhibit.

4. Whether there was a fatal variance between the pleading and the proof in Varo's case.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In July 2010, sixteen-year-old Antonio Robledo joined a criminal gang called "BPS 13." To become a member, Robledo was "jumped into" the gang by accepting a beating from other gang members while one member counted to thirteen. Transcript at 108. Only gang members participate in gang activities, and members are prohibited from discussing gang activities with non-members. Robledo often spent time with a fellow BPS 13 member, Juan Zabala, and Zabala's sixteen-year-old girlfriend, Varo. Robledo also knew Varo from school.

On August 20, Varo told Robledo at school that Zabala had "a job [for Robledo] to do." Id. at 115. Varo initially said she could not tell Robledo what the job was, but eventually she told him he was ordered to kill Chris Marin, a former member of BPS 13.

2

That evening, Zabala and Varo picked Robledo up from his home in a truck owned by Varo's father. Zabala had told Robledo they would be going to the Indiana State Fair. Instead, Zabala drove to Steak-n-Shake, where he told Robledo he had to kill Marin. At the restaurant, the three ordered food, and Zabala further discussed the order to kill Marin. Robledo used Varo's phone to call Marin to set up a time to meet on the pretense of selling Marin a gun. After several unsuccessful attempts to set up a meeting time, Marin agreed to meet Robledo at Marin's home at 11:30 that evening.

When Robledo, Zabala, and Varo left the restaurant, they drove to a park, where Zabala continued to tell Robledo how to kill Marin. They then drove on to Marin's home. Zabala parked the truck in an alley, took a gun from Varo's purse, and gave it to Robledo. Robledo walked toward the house while talking on the phone to Marin, who told him to meet at the bathroom window. Robledo walked around to the bathroom window, where Marin was waiting inside the bathroom with his head out the window. Robledo shot Marin and then ran back to the truck. Once inside the truck, he gave the gun to Zabala, who put it in Varo's purse. Zabala then quickly drove away.

The day after the shooting, Zabala told Robledo that he had not killed Marin. Zabala, Varo, Juan Gonzales, and Robledo drove to a party to give the gun Robledo had used to the head of the gang, someone known as Paninas.[1] The gun was transported in Varo's purse. At the meeting, Paninas told Zabala and Robledo to keep the gun and instructed Robledo to try again to kill Marin. Later, in Robledo's presence, he gave Zabala a different gun for Robledo to use.

---

[1] According to the information, Paninas is the street name for Israel Partida.

Sometime after the shooting, Robledo told his girlfriend that he had shot Marin. Robledo later told Varo that he had discussed the shooting with his girlfriend. When Zabala, Varo, and Robledo were next together, Zabala told Robledo he had to give him a "violation" for having discussed gang activity with a non-member. Id. at 135. For a violation, a member had to accept a beating from a gang member while another member counted to thirteen. Varo counted while Zabala beat Robledo for the violation.

Indianapolis Metropolitan Police Department ("IMPD") Sergeant Edward Bruce of the Criminal Gang Unit was the lead officer on the investigation of Marin's shooting. The State charged Robledo with the offense, and Robledo pleading guilty. In 2011, before his prison term was completed, he met with agents from the Immigration and Naturalization Service and with Sergeant Bruce. Robledo had a "heavy heart," was "emotionally upset" about what he had done, and "wanted to tell somebody what he did." Id at 91. The officers listened to him recount the details about Marin's shooting. Robledo was scheduled to be deported to Mexico the following day.

Based on the information from Robledo's statement that day, the Criminal Gang Unit obtained arrest and search warrants for Varo, Gonzalez, Zabala, and Israel Partida. On April 13, 2011, IMPD Lieutenant Marshall Depew served and executed the search warrant on Varo's home. At the home, officers found, in relevant part, suspected gang-related writings and photos with gang insignia on them.

In a single information, the State charged Varo, Zabala, Partida, and Gonzalez on April 12, 2011, with multiple counts arising from the shooting of Marin. Varo was charged with conspiracy to commit aggravated battery, as a Class B felony ("Count 1");

4

conspiracy to commit battery, as a Class C felony ("Count 2"); and criminal gang activity, a Class D felony ("Count 6").[2]  In May the State filed a motion to amend the information to add additional counts, including one against Varo.  On August 1, Varo filed a motion for severance, which the trial court granted after a hearing.  And on August 30, the court denied the State's motion to amend the information.

A jury trial was held February 15, 2012, as to the charges against Varo only.  The jury found Varo guilty of Count 2 and Count 6 and not guilty of Count 1.  At a subsequent hearing, the court sentenced Varo to three years for Count 2, with 646 days executed, 449 days suspended, and 449 days on non-reporting probation, and 646 days for Count 6, to be served concurrently.  Varo now appeals.

## DISCUSSION AND DECISION

### Issue One:  Sufficiency of Evidence

Varo contends that the evidence is insufficient to support her convictions.  When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses.  Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003).  We look only to the probative evidence supporting the judgment and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt.  Id.  If there is substantial evidence of probative value to support the conviction, it will not be set aside.  Id.

---

[2]  Although Varo was a juvenile at the time of the offenses, because she was at least sixteen years old, the juvenile court did not have jurisdiction over Count 6, which charged her with criminal gang activity.  See Ind. Code § 31-30-1-4(a)(8).

Conspiracy to Commit Battery

We first consider whether the evidence is sufficient to support Varo's conviction for conspiracy to commit battery.[3] To prove a conspiracy, the State was required to show beyond a reasonable doubt that Varo, with the intent to commit a felony, agreed with another person, namely Robledo, to commit a felony and that either she or Robledo performed an act in furtherance of the agreement. See Ind. Code § 35-41-5-2. Here, the underlying felony was battery.

The evidence shows that Varo informed Robledo of the order from the gang to shoot Marin; transported the gun in her purse before and after the shooting; was present when Robledo and Zabala discussed how to shoot Marin at Steak-n-Shake and at the park; was in the truck with Zabala when he drove Robledo to Marin's home, where Robledo shot Marin; and was with Robledo and Zabala when they attempted to give the gun to Paninas. Varo clearly knew of the order to shoot Marin, told Robledo about it and was with him before, during, and after the shooting, and Robledo took a significant step in furtherance of the conspiracy, namely, he shot Marin. Further, the evidence shows that gang rules prohibited discussing or performing gang activities in front of non-gang members. The evidence is sufficient to support Varo's conspiracy conviction.

Nevertheless, Varo challenges her conviction on two grounds. First, she contends that the charging information alleged that five individuals had agreed with each other to commit battery but there is no evidence of an agreement among all five individuals. The information reads:

---

[3] In some parts of its appellate brief, the State argues that the evidence is sufficient to support Varo's conviction for conspiracy to commit murder. Varo was neither charged with nor convicted of that offense.

> During the month of August 2010, ISREAL PARTIDA a/k/a "PENINA", JUAN ZABALA a/k/a "CONAJO", BRENDA VARO and JUAN GONZALEZ a/k/a "DUENDE", with the intent to commit the felony of Battery, did agree with Antonio Robledo a/k/a "Flaco" to commit said felony of Battery, which is to knowingly or intentionally touch another person, in this case Christopher Marin, in a rude, insolent or angry manner by means of a deadly weapon, and Antonio Robledo a/k/a "Flaco" performed the following overt act in furtherance of the agreement, that is: shooting said Christopher Marin with a handgun[.]

Appellant's App. at 36. Varo argues that the charge requires the State to show that Partida, Zabala, Varo, Gonzalez, and Robledo all agreed with each other to commit the act of battery. But Varo misreads the charging information. The charge required the State to show in relevant part that Partida, Zabala, Varo, and Gonzalez each agreed with Robledo to commit the act of battery. The charge did not require a collective agreement between all five people listed in that count. Varo's argument based on her mistaken reading of the charging information must fail.

Varo also contends that the evidence does not show an agreement to shoot Marin that involved her in any way. In support, she points to evidence that she had tried to talk Robledo out of joining the gang but now he had a "job to do." Transcript at 115. She also points to evidence showing that she told Zabala and Robledo that shooting Marin was "stupid" and they should not do it. Id. at 165. And she points to Robledo's testimony that she did not order him to shoot Marin. But those arguments amount to a request for us to reweigh the evidence, which we will not do. Jones, 783 N.E.2d at 1139. The evidence shows that Varo informed Robledo of his "job," to shoot Marin, and that she transported the gun in her purse before and after the shooting. That evidence is sufficient to show her involvement in the conspiracy. Varo's arguments to the contrary

7

must fail. The evidence is sufficient to support her conviction for conspiracy to commit battery.

Criminal Gang Activity

Varo also contends that the evidence is insufficient to support her conviction for criminal gang activity. A "criminal gang" is a group with at least three members that specifically: (1) either: (A) promotes, sponsors, or assists in; or (B) participates in; or (2) requires as a condition of membership or continued membership; the commission of a felony or an act that would be a felony if committed by an adult or the offense of battery. Ind. Code § 35-45-9-1. In order to convict Varo of criminal gang activity, the State must have shown beyond a reasonable doubt that she: (1) was an active member of a criminal gang, (2) had knowledge of the group's criminal advocacy, and (3) had a specific intent to further the group's criminal goals. See Ind. Code § 35-45-9-3. Varo contends that the evidence does not show either that she was a gang member or that she acted with a specific intent to further the gang's criminal goals. We address each contention in turn.

We first consider Varo's contention that there is no evidence showing that she was a gang member. Specifically, Varo argues that the only evidence of her membership in the gang came from Sergeant Bruce. He testified that IMPD tracks gang membership by having IMPD officers submit a form after they observe an individual exhibit one of a set list of gang-related behaviors. Those behaviors include associating with known gang members, wearing the gang's colors, flashing gang hand signs, identification by other gang members as a gang member, "social media," or admitting to membership in the gang. Transcript at 65. Sergeant Bruce testified that an officer who observes such

8

behavior is asked to fill out a form and send it to the Criminal Gang Unit, which tracks the data gathered from the forms. Sergeant Bruce further testified that a person is considered a "confirmed gang member" if he or she meets three of the criteria and that Varo had met three of the criteria: associates with known gang members, writes about it, and was identified as a member by other gang members. Id. at 64, 90.

Varo contends that the only testimony about her alleged gang membership came from Sergeant Bruce, but he "did not say what other gang members had pointed her out" and "did not identify any gang-related writings authored by" her. Appellant's Brief at 15. In essence, Varo attacks the foundation for Sergeant Bruce's conclusion that she was a gang member.

But there is independent evidence to show that Varo is a gang member. Specifically, Robledo testified that gang activities can be performed only with other gang members and information about those activities can be shared only with other members. Here, Varo was present over the course of the evening during which Zabala and Robledo had several conversations about Robledo's order to kill Marin. And Varo carried the gun in her purse, before and after the shooting. Further, when Robledo later confessed to Varo that he had told his girlfriend about his involvement in the shooting, Varo told Zabala, who imposed a "violation" on Robledo in Varo's presence, and Varo counted to thirteen while Zabala beat Robledo for the violation. That independent evidence supports a conclusion that Varo was a gang member.

Varo also contends that there is insufficient evidence to show that she had a "specific intent to further the goals of [the gang] when she rode along in the car that night

9

with her boyfriend [Zabala] and Robledo." Appellant's Brief at 15. In particular, she points to evidence showing that she opposed the shooting, having told Robledo and Zabala that it was stupid and not to do it. But there is also evidence that Varo was the first to tell Robledo that he was ordered to shoot Marin and that she transported in her purse the gun that Robledo used in the shooting. Varo carried the gun in her purse before and after the shooting. It was for the jury to determine whether this evidence was sufficient to show that Varo had a specific intent to further the goals of the gang. See Jones, 783 N.E.2d at 1139. Varo has not demonstrated that the evidence is insufficient to show that she had a specific intent to further the group's criminal goals, here, shooting Marin. As such, Varo has not shown that the evidence is insufficient to support her conviction for criminal gang activity.

**Issue Two: Jury Instructions**

Varo next contends that the trial court erred when it instructed the jury. As we have discussed:

> The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. Instruction of the jury is left to the sound judgment of the trial court and will not be disturbed absent an abuse of discretion. Jury instructions are not to be considered in isolation, but as a whole and in reference to each other. The instructions must be a complete, accurate statement of the law which will not confuse or mislead the jury. Still, errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise.

Johnson v. State, 959 N.E.2d 334, 338 (Ind. Ct. App. 2011) (internal quotation marks and citations omitted), trans. denied. Varo contends that the trial court erred when it

instructed the jury on conspiracy to commit battery and when it refused to instruct the jury on aiding and abetting in the offenses. We address each argument in turn.

Conspiracy Instruction

We first consider Varo's contention that the trial court erred when it instructed the jury, in the preliminary and the final instructions, that the jury could find Varo guilty of conspiracy to commit battery upon proof of an agreement only with Robledo.

> In reviewing a challenge to a jury instruction, we consider: (1) whether the instruction is a correct statement of the law; (2) whether there was evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court.

Id. (citation omitted). But Varo concedes that she did not object to the instruction at the trial court. Therefore, we review her claim only for fundamental error. Fundamental error occurs only if the error was so prejudicial to the rights of the appellant that he could not have had a fair trial. Harper v. State, 963 N.E.2d 653, 660 (Ind. Ct. App. 2012) (citation omitted). "To rise to the level of fundamental error, the error must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." Id. (internal quotation marks and citation omitted).

We first observe that the instruction Varo challenges is the same one she tendered to the trial court. Therefore, the error, if any, is invited. See Dumas v. State, 803 N.E.2d 1113, 1121 (Ind. 2004) ("A party may not invite error and then later argue the error supports reversal."). And, in any event, Varo's argument regarding the conspiracy to commit battery is, like her sufficiency of evidence claim, based on the charging

11

information.  Again, she reads the charging information to require agreement between all five of the people listed in Count 2.  The charging information required the State to show in relevant part that Partida, Zabala, Varo, and Gonzalez each agreed with Robledo to commit the act of battery.  The charge did not require a collective agreement between all five people listed.  Similarly, the preliminary and final jury instructions provide, in relevant part:

> To convict the defendant of conspiracy to commit battery, the State must prove each of the following elements:
>
> 1.  The defendant, Brenda Varo,
> 2.  with the intent to commit battery, a felony,
> 3.  did agree with Antonio Robledo a/k/a "Flaco",
> 4.  to commit said felony of battery, which is to knowingly or intentionally touch another person, in this case:  Christofer Marin, in a rude, insolent or angry manner, by means of a deadly weapon,
> 5.  and Antonio Robledo a/k/a "Flaco" performed an overt act in furtherance of the agreement, that is:  shooting said Christofer Marin with a handgun.

Appellant's App. at 131, 154.

Varo's argument is, again, based on her mistaken reading of the charging information.  The language of the relevant instructions tracks the language of the charging information.  We have already held that Varo misreads the charging information.  The charging information required the State to show, in part, an agreement only between Varo and Robledo, and the jury was so instructed.  As such, Varo has not shown error, substantial or otherwise, or any violation of due process with regard to the jury instructions on conspiracy to commit battery.

12

<u>Tendered Instruction</u>

Varo also contends that the trial court erred when it refused to instruct the jury on aiding and abetting. Again, errors in the refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise. <u>Johnson</u>, 959 N.E.2d at 338. And the instructions must be a complete, accurate statement of the law which will not confuse or mislead the jury. <u>Id.</u>

Here, Varo requested the trial court to instruct the jury as follows:

Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish that an Accused aided and abetted the crime. The State must prove all of the elements of [aiding, inducing, causing] the offense beyond a reasonable doubt, as given to you in that instruction, before you may find the accused guilty.

Appellant's App. at 145. She argues that the trial court abused its discretion when it refused to give that instruction to the jury. We need not decide whether the trial court's refusal to give the tendered instruction was an abuse of discretion because "errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." <u>Dill v. State</u>, 741 N.E.2d 1230, 1233 (Ind. 2001).

Again, the evidence shows that Varo told Robledo that he would be instructed to kill Marin, she was with Robledo and Zabala at all times before the shooting when they were discussing how it should be carried out, and before and after the shooting she carried in her purse the gun Robledo used to shoot Marin. Thus, as we held above, the evidence is sufficient to show that she conspired to commit battery. Regarding the offense of criminal gang activity, the evidence shows that gang rules prohibited

discussing or performing gang activities in front of anyone except gang members and that Varo knew before Robledo did of the order to shoot Marin, was present for the instructions on shooting Marin, was present when Robledo shot Marin, and counted to thirteen while Zabala beat Robledo as punishment for Robledo telling his girlfriend about his involvement in the shooting. That evidence is sufficient to show that Varo was not a mere bystander and to support her conviction for criminal gang activity. Because the evidence supports Varo's convictions, she has not shown that the trial court's refusal to instruct the jury on "mere presence" was reversible error. See id.

### Issue Three: Admission of Evidence

Varo also contends that the trial court improperly admitted certain evidence at trial. Again, we review the admission of evidence at trial for an abuse of discretion. Bean v. State, 913 N.E.2d 243, 250 (Ind. Ct. App. 2009) (citation omitted), trans. denied. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. Id. Conflicting evidence is viewed most favorably to the trial court's ruling. Id. (citation omitted).

Varo contends that the trial court abused its discretion when it admitted certain evidence. Specifically, Varo contends that the trial court abused its discretion when it admitted testimony from Sergeant Bruce regarding IMPD's process of identifying criminal gang members. But Varo did not object at trial to Sergeant Bruce's testimony in that regard. Thus, she has waived any challenge to the admission of that testimony. See Granger v. State, 946 N.E.2d 1209, 1220 (Ind. Ct. App. 2011).

14

Varo also contends that the trial court's admission of State's Exhibit 1 was an abuse of discretion. That exhibit was a large chart entitled "BPS 13 NAMES," a list of individuals' names next to "street name" or nicknames, and the State used the chart during opening statement. State's Exhibit 1. The trial court admitted that demonstrative exhibit over Varo's objection that it was a substantive, not a demonstrative, exhibit. At trial, Sergeant Bruce testified regarding the individuals listed on the exhibit and their street names, including Varo. On appeal Varo again challenges admission of the exhibit as improper substantive evidence that invaded the province of the jury.

But State's Exhibit 1 is cumulative of Sergeant Bruce's testimony. Reversible error cannot be predicated upon a trial court's admission of evidence that is merely cumulative. English v. State, 603 N.E.2d 161, 164 (Ind. Ct. App. 1992). Moreover, Varo concedes that she did not object to Sergeant Bruce's testimony at trial regarding the information on State's Exhibit 1. She has waived her challenge to the cumulative evidence on that demonstrative exhibit, see id., and she has not shown fundamental error in the admission of the same, see Harper, 963 N.E.2d at 660. Varo's contentions regarding the admission of State's Exhibit 1 must fail.[4]

### Issue Four: Fatal Variance

Finally, Varo contends that there is a fatal variance between the charging information and the evidence admitted at trial. A variance is an essential difference between the pleading and the proof. Mitchem v. State, 685 N.E.2d 671, 677 (Ind. 1997)

---

[4] To the extent Varo contends that the trial court erred by failing to the instruct the jury on the demonstrative nature of the exhibit, she has not shown that she requested such an instruction at trial. Therefore, the argument is waived. See Ortiz v. State, 766 N.E.2d 370, 375 ("tendered instruction is necessary to preserve error").

(quotation marks and citation omitted). Not all variances between allegations in the charge and the evidence at trial are fatal. Id. (quotation marks and citation omitted).

> The test to determine whether a variance between proof at trial and a charging information or indictment is fatal is as follows:
>
> (1) was the defendant misled by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and was [she] harmed or prejudiced thereby;
>
> (2) will the defendant be protected in the future criminal proceeding covering the save event, facts, and evidence against double jeopardy?

Id. (citing Harrison v. State, 507 N.E.2d 565, 566 (Ind. 1987)).

Here, Varo contends that she is "vulnerable to double jeopardy in a future criminal proceeding addressing the same event, facts and evidence but alleging separate conspiracies with Partida, Zabala, and/or Gonzalez." Appellant's Brief at 27-28. But her argument is based, again, on her misreading of the charging information. As discussed above, Count 2 of the information alleged that Partida, Zabala, Varo, and Gonzalez agreed with Robledo, not with each other, to commit battery against Marin. The charging information does not allege a conspiracy between Varo and anyone else listed in Count 2. Therefore, she is not "vulnerable to double jeopardy," see id., and her argument on this issue must fail.

**Conclusion**

The evidence is sufficient to support Varo's convictions for conspiracy to commit battery, as a Class C felony, and criminal gang activity, as a Class D felony. Varo has not shown that the trial court committed fundamental error when it instructed the jury on the conspiracy charge, nor has she shown reversible error when the court refused a tendered

16

instruction on Varo's "mere presence" at the time of the offense. Further, Varo has not shown fundamental error in the admission of Sergeant Bruce's testimony about her membership in a gang, nor has she shown reversible error in the State's admission of a cumulative demonstrative exhibit that lists the names of gang members next to their street names. Finally, Varo has not shown a fatal variance between the proof and the pleading in this case. Therefore, we affirm her convictions for conspiracy to commit battery, as a Class C felony, and criminal gang activity, as a Class D felony.

Affirmed.

KIRSCH, J., and MAY, J., concur.