David L. JOHNSON, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 82A01–1103–CR–130.

Court of Appeals of Indiana.

Dec. 29, 2011.

Rehearing Denied April 10, 2012.

Matthew J. McGovern, Evansville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Brian Reitz, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

## STATEMENT OF THE CASE

David L. Johnson, Jr. appeals his conviction for neglect of a dependent, as a Class A felony, following a jury trial. Johnson raises three issues for our review:

1. Whether the trial court abused its discretion when it denied his request for jury instructions on lesser-included offenses;

2. Whether the trial court abused its discretion when it admitted into evidence Johnson's statements on a mental health assessment that he was concerned he would harm his infant child, A.J.; and

3. Whether the prosecutor filed an amended information against him out of "vindictiveness," Appellant's Br. at 8.

We affirm.

## FACTS AND PROCEDURAL HISTORY

A.J. was born to Johnson and Lori Record in September of 2008. On January 12, 2009, Johnson attended a voluntary counseling session with a social worker. At that session, Johnson filled out an assessment in which he expressed concern that he might become angry and hurt A.J., who was with him. Personnel at the session noticed a bruise on A.J.'s cheek and called child protective services. The case manager then met with Johnson and Lori, who stated that A.J. had caused the bruise by pinching her own cheek. The case manager requested that A.J. be seen by a physician and have x-rays taken. Johnson and Lori complied, and the x-rays revealed no injuries.

On February 5, Lori went to sleep and left Johnson with A.J. Johnson fed A.J. and then went to bed. About fifteen minutes later, Johnson got up to get a drink, and he noticed that A.J. was no longer breathing and had turned purple in color. Johnson moved A.J. to the couch and attempted CPR for about two minutes before waking Lori and calling 911.

Upon their arrival, paramedics intubated A.J. and were able to restore a pulse. They then rushed A.J. to the hospital. The treating emergency medical physician noticed that A.J. was hypothermic, with a temperature of ninety-four degrees, indicating a lack of heartbeat or respiration for one to three hours. A.J. had small abrasions on her neck, scratches on her chin, and a knot on the right side of her head by her hairline. A.J. was diagnosed as brain dead, and she died on February 9.

The radiologist who had originally reviewed A.J.'s January 15 x-rays re-evaluated them. Upon reconsideration, he noticed a non-displaced fracture of the right clavicle. He also reviewed x-rays taken of A.J. when she arrived at the emergency room on February 5. According to those scans, A.J. had suffered a fractured humerus and a tibia injury. The subsequent autopsy report revealed evidence of multiple blunt force trauma to A.J.'s head and face; swelling around her eyes; a torn frenulum; a laceration to her spleen; hemorrhages of the liver; subdural hematomas in the back of A.J.'s head; and a brain herniation. In light of those injuries, the coroner concluded that A.J. had died of child abuse and was the victim of homicide.

On April 7, the State charged Johnson with neglect of a dependent, as a Class A felony. On June 9, 2010, Johnson moved to dismiss the State's allegation on the ground that it lacked sufficient specificity. Three days later, Johnson agreed to plead guilty to a Class B felony charge of neglect of a dependent.

On July 12, the trial court rejected Johnson's plea agreement. At the same time, the court granted Johnson's motion to dismiss the indictment but permitted the State the opportunity to amend. The State filed its amended indictment later that day, in which it specifically alleged that A.J. had died of blunt force trauma to the head. The State also added an additional charge of Class A felony neglect of a dependent in which the State alleged that Johnson "did knowingly place [A.J.] in situations of abuse and violent behavior that included striking of [A.J.] and the eventual death of said dependent...." Appellant's App. at 521.

Johnson objected to the inclusion of an additional charge in the State's amended indictment. In particular, Johnson asserted that the additional charge "constituted vindictive prosecution." Appellant's Br. at 27. On September 24, 2010, the court held a hearing on Johnson's motion. And, on November 23, the court entered findings of fact and conclusions thereon denying the motion. In relevant part, the court concluded as follows:

> (4) In the case at bar, the Defendant had plea bargained[,] which the Court rejected. His Second Motion to Dismiss was granted with the State having leave to amend. The State's amendment more specifically addressed the alleged criminal actions of the Defendant and left the dates of the offense unchanged. The Defendant's Motions in Limine and 404(b) were still under advisement by the Trial Court with no indication or ruling made by the Court when Count II was filed. At the hearing of September 24, 2010, the Deputy Prosecuting Attorney claimed Count II was not filed earlier because of the plea agreement being filed. When the Court rejected the plea agreement, the State felt entitled to go forward on filing Count II.... When given further opportunity to present di-

rect evidence to support the claim of vindictiveness ... Defense Counsel called no witnesses and rested on [the] briefs and arguments.

> (5) Rather than direct evidence of vindictiveness, the Defendant has argued circumstantial inferences such as the time of filing Count II and that[,] as of September 24, 2010, the Co–Defendant, Lori Record, had not had a Count II filed in her case. The Court finds no direct evidence exists to show the State of Indiana's decision to file an additional charge was motivated by a desire to punish the Defendant for doing something the law allowed him to do.

Appellant's App. at 259–60. Johnson then moved to sever Count I and Count II, which the trial court granted. The State then proceeded to prosecute Johnson on Count II.

At the ensuing jury trial on Count II, the trial court admitted into evidence, over Johnson's objection, Johnson's January 12, 2009, mental health assessment, in which Johnson had stated that he might become angry and hurt A.J. And at the close of the trial, the court denied Johnson's tendered jury instructions on the lesser-included offenses of neglect of a dependent, as either a Class C or Class D felony. The jury found Johnson guilty of neglect of a dependent, as a Class A felony. The trial court entered its judgment of conviction and sentenced Johnson to an executed term of forty years. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Jury Instructions

■ Johnson first contends that the trial court abused its discretion when it denied his proffered jury instructions for two lesser-included crimes of neglect of a dependent. As we have discussed:

"The purpose of a jury instruction 'is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.'" *Dill v. State*, 741 N.E.2d 1230, 1232 (Ind.2001) (quoting *Chandler v. State*, 581 N.E.2d 1233, 1236 (Ind.1991)). Instruction of the jury is left to the sound judgment of the trial court and will not be disturbed absent an abuse of discretion. *Schmidt v. State*, 816 N.E.2d 925, 930 (Ind.Ct.App. 2004), *trans. denied.* Jury instructions are not to be considered in isolation, but as a whole and in reference to each other. *Id.* The instructions must be a complete, accurate statement of the law which will not confuse or mislead the jury, *Id.* at 930–31. Still, errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise, *Id.* at 933 (citing *Dill,* 741 N.E.2d at 1233).

*Williams v. State,* 891 N.E.2d 621, 630 (Ind.Ct.App.2008). Further:

In reviewing a challenge to a jury instruction, we consider: (1) whether the instruction is a correct statement of the law; (2) whether there was evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court.

*Simpson v. State,* 915 N.E.2d 511, 519 (Ind.Ct.App.2009) (quotation omitted), *trans. denied.*

Our supreme court has explained the process for accepting a tendered instruction on a lesser-included offense as follows:

First, a trial court must compare the statute defining the crime charged with the statute defining the alleged lesser included offense. If (a) the alleged less-er included offense may be established "by proof of the same material elements or less than all the material elements" defining the crime charged, Ind.Code § 35–41–1–16(1) (1993), *Aschliman v. State* (1992), Ind., 589 N.E.2d 1160, 1161, or (b) the only feature distinguishing the alleged lesser included offense from the crime charged is that a lesser culpability is required to establish the commission of the lesser offense, Ind. Code § 35–41–1–16(3) (1993), *Holder v. State* (1991), Ind., 571 N.E.2d 1250, 1256, then the alleged lesser included offense is inherently included in the crime charged. If an offense is inherently included in the crime charged, then a trial court should proceed to step three below. We emphasize here that the wording of a charging instrument never forecloses or precludes an instruction on an inherently lesser included offense. *Aschliman,* 589 N.E.2d at 1161.

Second, if a trial court determines that an alleged lesser included offense is not inherently included in the crime charged under step one, then it must compare the statute defining the alleged lesser included offense with the charging instrument in the case. If the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense, then the alleged lesser included offense is factually included in the crime charged, and the trial court should proceed to step three below. *Lynch v. State* (1991), Ind., 571 N.E.2d 537, 538. If the alleged lesser included offense is neither inherently nor factually included in the crime charged, then the trial court should not give a requested instruction on the alleged lesser included offense. *See Straub v. State* (1991), Ind., 567 N.E.2d 87, 90.

Third, if a trial court has determined that an alleged lesser included offense is either inherently or factually included in the crime charged, it must look at the evidence presented in the case by both parties. *If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense.* Aschliman, 589 N.E.2d at 1162; *Lynch,* 571 N.E.2d at 539. If the evidence does not so support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction.

*Wright v. State,* 658 N.E.2d 563, 566–67 (Ind.1995) (emphasis added; footnotes omitted).

According to Indiana Code Section 35–46–1–4:

(a) A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:

(1) places the dependent in a situation that endangers the dependent's life or health;

(2) abandons or cruelly confines the dependent;

(3) deprives the dependent of necessary support; or

(4) deprives the dependent of education as required by law;

commits neglect of a dependent, a Class D felony.

(b) However, the offense is:

(1) a Class C felony if it is committed under subsection (a)(1), (a)(2), or (a)(3) and:

(A) results in bodily injury . . .;

(2) a Class B felony if it is committed under subsection (a)(1), (a)(2), or (a)(3) and results in serious bodily injury;

(3) a Class A felony if it is committed under subsection (a)(1), (a)(2), or (a)(3) by a person at least eighteen (18) years of age and results in the death of a dependent who is less than fourteen (14) years of age. . . .

Here, the trial court instructed the jury on the Class A and Class B felony versions of neglect of a dependent. The court denied Johnson's proffered instructions on the Class C and Class D felony versions of that crime. There is no dispute that Johnson's proffered instructions are lesser-included offenses of the charged crime.

Thus, this issue centers on whether there was a serious evidentiary dispute about the element that distinguishes the greater offense from the lesser. For our purposes, the only distinguishing element between the different levels of the offense is the harm caused to the dependent. A Class A felony requires death; a Class B felony requires serious bodily injury; and a Class C felony requires bodily injury. I.C. § 35–46–1–4. A Class D felony does not require the dependent to have been physically injured. *Id.*

There is no serious evidentiary dispute that Johnson's neglect resulted in at least serious bodily injury to A.J. "Serious bodily injury" includes broken bones, a point Johnson concedes, *see* Appellant's Br. at 14, and Johnson's own medical experts testified that A.J. had suffered broken bones and that those injuries were the result of abuse. At trial, Johnson's theory of defense "was . . . that, while A.J. had been abused, her abuse did not result in death." *Id.* at 13. That defense would not support

an instruction on a Class C or Class D offense because it does not call into question whether A.J. suffered serious bodily injury. Johnson also argued at trial that he was not the abuser. If true, that would be a total defense, and it would be true with or without the Class C or Class D instructions. Thus, since the evidence does not disclose a serious evidentiary dispute on the element of serious bodily injury, the trial court did not abuse its discretion when it refused Johnson's proffered instructions on the lesser-included Class C and Class D felony offenses.[1]

### Issue Two: Admission of Evidence

 Johnson also contends that the trial court abused its discretion when it admitted into evidence his January 2009 statements on the mental health assessment. Our standard of review of a trial court's findings as to the admissibility of evidence is an abuse of discretion. *Roush v. State*, 875 N.E.2d 801, 808 (Ind.Ct.App. 2008). An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* The trial court's ruling will be upheld if it is sustainable on any legal theory supported by the record. *Rush v. State*, 881 N.E.2d 46, 50 (Ind.Ct.App.2008).

Johnson claims that the following testimony of the social worker he met with in January of 2009 was inadmissible under Indiana Evidence Rules 401, 402, 403, and 404:

Q [by the deputy prosecutor]: And then through your review of the documentation did [Johnson] express concern that he might harm the three-and-a-half month old [A.J.]?

A Yes. In his assessment. He had ... expressed concern he might be angry and hurt his significant other or the baby.

Transcript at 399–400.[2]

The social worker's testimony was relevant and, therefore, admissible under Indiana Evidence Rules 401 and 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of an action more probable or less probable than it would be without the evidence," Ind. Evidence Rule 401, and, generally speaking, "[a]ll relevant evidence is admissible," Evid. R. 402. The social worker's testimony demonstrated Johnson's anger issues and how those issues might affect A.J. As such, its admission made the determination of Johnson's guilt more probable. The testimony was admissible under Rules 401 and 402.

 The social worker's testimony was also admissible under Rule 403. That rule provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Evid. R. 403. In *Berry v. State*, our supreme court stated as follows:

---

1. Johnson's argument on appeal that the State "invited the consideration of these lesser-included offenses" is without cogent reasoning and we do not consider it. *See* Ind. Appellate Rule 46(A)(8)(a); Appellant's Br. at 15.

2. In his appellate brief, Johnson also identifies the autopsy report, in which the coroner stated that Johnson had " 'requested psychological assessment for his anger con-

trol issues.' " Appellant's Br. at 17 (quoting Appellant's App. at 817). The substance of Johnson's appellate argument makes clear that he only challenges the social worker's testimony. However, even assuming Johnson had challenged the autopsy report, for the reasons we affirm the trial court's admission of the social worker's testimony we likewise would affirm the admission of the autopsy report.

[The defendant] contends his "I will kill you and then leave" statement was just an episode of momentary anger that did not constitute a real threat. Indeed, his brother testified that he thought defendant was just "blowing off steam," not actually threatening their parents [the victims of murder]. Because the statement was not a real threat, defendant maintains, its relevance was slight. But because the jury might well have drawn an inference of bad character from the evidence of the threat, defendant argues, it caused him substantial unfair prejudice.

We recently faced the question of the admissibility of evidence of threats of violence by a defendant against his eventual victim made two months before a murder. *Ross v. State*, 676 N.E.2d 339 (Ind.1996). We held that the trial court did not abuse its discretion in finding the threats admissible. Specifically, we found that the danger of unfair prejudice from the threats in that case did not outweigh their probative value. *Id.* at 346.

We reach the same result here. While the threat was admittedly more remote in time than that in *Ross* (six months here vs. two months in *Ross* ) and perhaps more equivocal ("blowing off steam"), this evidence was presented as part of more general testimony about the relationship between the defendant and the rest of his family. This testimony indicated that relations were strained and that the defendant often argued with his parents about his lifestyle, par-

ticularly his failure or refusal to find employment. There was no objection to this more general testimony of strained relations, only to the specific threat. For the same reasons we did so in *Ross*, we find that the trial court did not abuse its discretion in admitting the specific threat. It showed the degree to which relations had become strained. And as to the seriousness of the threat, that was a matter of weight for the jury to decide.

704 N.E.2d 462, 464 (Ind.1998).

We hold that our supreme court's analysis in *Berry* controls our analysis here. Similar to the testimony in *Berry*, here the social worker testified that Johnson had anger issues and that he was concerned those issues might cause him to physically harm his daughter, A.J. That testimony indicated that Johnson had a violent family relationship. And, as in *Berry*, to the extent that Johnson contends that his statements were conditional or equivocal, that was a matter of weight for the jury to decide. As such, the trial court did not abuse its discretion when it concluded that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.[3]

■ Finally, the social worker's testimony was admissible under Rule 404(a).[4] Rule 404(a) states, in relevant part, that "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion. . . ." In support of his argument under Rule 404(a), Johnson relies on this court's opinion in

---

**3.** In his reply brief, Johnson asserts that *Berry* is distinguishable because that case is based on Rule 404(b). That is not so. Our supreme court made clear that its analysis was based entirely on Rule 403. *Berry*, 704 N.E.2d at 464 ("While defendant mentions Rule 404(b), he makes his principal argument on this issue under Rule 403.").

**4.** The parties agree that Rule 404(b) does not apply here. *See Clark v. State*, 915 N.E.2d 126, 130 (Ind.2009) ("It was Clark's words and not his deeds that were at issue, so Rule 404(b) does not apply.").

*Oldham v. State,* 779 N.E.2d 1162 (Ind.Ct. App.2002), *trans. denied.* In *Oldham,* the prosecutor offered into evidence the defendant's business cards bearing the name "Rob Goddie" and phrases like "Tre Block" and "Dope City." *Id.* at 1171. The State also offered a "novelty photograph" of the defendant with text bearing the words "America's Most Wanted," "Wanted for robbery, assault, arson, jaywalking," "Considered armed and dangerous," and "Approach with extreme caution." *Id.* In reversing the defendant's conviction for murder on the grounds of fundamental error, we observed that when the defendant testified, the prosecutor "tried to use the business cards and the novelty photograph to paint [the defendant] as a dangerous criminal." *Id.* at 1172. Johnson claims that "[t]he evidence is no different in this case." Appellant's Br. at 22.

*Oldham* is inapposite here. As we stated in that case, the State's evidence sought "to paint Oldham as a dangerous criminal" and "was obviously inadmissible" under Rule 404. *Oldham,* 779 N.E.2d at 1172. Here, the social worker's testimony was not offered as evidence of Johnson's poor character. Rather, the testimony tended to prove that Johnson was the person that harmed A.J. As the State notes, "Johnson's statement was not a character statement, but a factual admission.... Johnson warned that he would commit the underlying offense, then he committed [it]." Appellee's Br. at 13–14. Accordingly, the trial court did not abuse its discretion when it admitted the social worker's testimony under Rule 404(a).

### Issue Three: Prosecutorial Vindictiveness

Last, Johnson asserts that the State's addition of Count II in its amended indictment constituted prosecutorial vindictiveness. Johnson acknowledges that the re-filed indictment is a pre-trial action,

that "[t]he State's pre-trial action [is] presumptively valid," *Penley v. State,* 506 N.E.2d 806, 811 (Ind.1987), and that to establish a successful claim in this circumstance Johnson "must ... show actual vindictiveness," Appellant's Br. at 28 (citing *State v. Selva,* 444 N.E.2d 329, 331 (Ind.Ct. App.1983)). Actual vindictiveness occurs when " 'the prosecutor's charging decision was motivated by a desire to punish [the defendant] for doing something that the law plainly allowed him to do.' " *Selva,* 444 N.E.2d at 331 (quoting *United States v. Goodwin,* 457 U.S. 368, 384, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)).

The trial court overruled Johnson's objection to the State's addition of Count II following an evidentiary hearing. We will reverse such a ruling only upon a showing of an abuse of discretion. *See Penley,* 506 N.E.2d at 811–12. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Washington v. State,* 784 N.E.2d 584, 587 (Ind.Ct.App. 2003). We will not reweigh the evidence, and we consider conflicting evidence in the light most favorable to the trial court's ruling. *Cole v. State,* 878 N.E.2d 882, 885 (Ind.Ct.App.2007).

On June 9, 2010, Johnson moved to dismiss the State's indictment on the ground that it lacked sufficient specificity. Three days later, Johnson agreed to plead guilty to a Class B felony charge of neglect of a dependent. That same day, the trial court both rejected Johnson's plea agreement and granted his motion to dismiss the indictment. However, the court permitted the State to amend the indictment. The State filed its amended indictment later that day, and the State added Count II for the first time. The crux of Johnson's argument on appeal is that the timing of the State's inclusion of Count II in its amended indictment can only be explained by

actual vindictiveness in response to his motion to dismiss.

We cannot agree. As the trial court expressly found, "Count II was not filed earlier because of the plea agreement [having been] filed. When the Court rejected the plea agreement, the State felt entitled to go forward [with] filing Count II." Appellant's App. at 259. The trial court's finding is supported by the testimony of the deputy prosecuting attorney and, in turn, the court's finding supports its conclusion that the State's addition of Count II was not based on a desire to punish Johnson for his motion to dismiss. Hence, we affirm the trial court's judgment on this issue.

### Conclusion

In sum, the trial court did not abuse its discretion when it denied Johnson's tendered jury instructions on two lesser-included offenses of neglect of a dependent. The trial court also did not abuse its discretion when it permitted the State to introduce into evidence the social worker's testimony. And the trial court's conclusion that the State did not act out of vindictiveness when it included Count II in the amended indictment is not clearly erroneous. Thus, we affirm Johnson's conviction.

Affirmed.

ROBB, C.J., and VAIDIK, J., concur.