**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CARLOS I. CARRILLO**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ERIC T. SHAMBLIN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1311-CR-994 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Donald L. Daniel, Judge
Cause No. 79C01-1203-FC-7

**August 19, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Eric Shamblin appeals his conviction for Class A felony attempted child molesting and the finding that he is a sexually violent predator. We affirm.

**Issues**

The issues before us are:

I.   whether the trial court properly allowed the State to amend the charging information to add a more serious charge following Shamblin's first trial that resulted in a hung jury;

II.  whether the trial court properly excluded exhibits tendered by Shamblin that purportedly were relevant to judging the victim's credibility;

III. whether there is sufficient evidence to support Shamblin's conviction; and

IV.  whether the trial court properly found Shamblin to be a sexually violent predator.

**Facts**

In the fall of 2011, Shamblin was dating the mother of twelve-year-old J.T. One day in September or October 2011, Shamblin was babysitting J.T. Shamblin and J.T. were sitting on a couch together, watching television. At some point, Shamblin reached into J.T.'s shorts and attempted to put his finger inside of J.T.'s vagina. J.T. indicated that Shamblin was hurting her, and he stopped and apologized to her. Tr. p. 202. Shamblin later admitted to police that he was "curious" about what a twelve-year-old's vagina was like, but he denied having any sexual intent in attempting to put his finger inside J.T.'s vagina. Ex. 2.

On March 6, 2012, the State charged Shamblin with one count of Class C felony child molesting.[1] The information specifically alleged that Shamblin had fondled J.T.'s genital area with his hand or finger. A jury trial eventually was scheduled for April 2, 2013. On March 14, 2013, the State filed a motion to add a charge of Class A felony attempted child molesting to the charging information. The new charge alleged that Shamblin had attempted to perform deviate sexual conduct on J.T. by trying to put his finger inside her vagina. In denying this motion and the State's motion to reconsider that denial, the trial court stated that the amendment would not permit Shamblin enough time to prepare for trial. The jury trial went ahead on April 2, 2013. It ended on April 3, 2013, with a deadlocked jury and the trial court's discharge of the jury.

On April 4, 2013, the State filed another motion to add the Class A felony attempted child molesting charge. On June 13, 2013, after conducting a hearing on the matter, the trial court allowed the addition of the Class A felony charge. A second jury trial was held on October 1-3, 2013. At its conclusion, the jury found Shamblin not guilty of Class C felony child molesting but guilty of Class A felony attempted child molesting. The trial court sentenced Shamblin accordingly and also entered a finding that he is a sexually violent predator. Shamblin now appeals.

**Analysis**

*I. Amendment of Charging Information*

---

[1] The felony "class" system was replaced with a "level" system, effective July 1, 2014. See P.L. 158-2013.

3

Shamblin first contends the trial court erred in permitting the State to amend the charging information and add the Class A felony attempted child molesting count after his first trial ended with a deadlocked jury. Shamblin contends the amendment amounted to vindictiveness by the prosecutor. We disagree.

We review a trial court's decision to allow amendment of a charging information in the face of a claim of prosecutorial vindictiveness for an abuse of discretion. Johnson v. State, 959 N.E.2d 334, 342 (Ind. Ct. App. 2011), trans. denied. An abuse of discretion occurs if a decision is clearly against the logic and effect of the facts and circumstances before the trial court or if it has misinterpreted the law. Heaton v. State, 984 N.E.2d 614, 616 (Ind. 2013).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits prosecutorial vindictiveness in charging decisions. Sisson v. State, 985 N.E.2d 1, 10 (Ind. Ct. App. 2012), trans. denied. In some cases, a presumption of vindictiveness may arise and actual vindictiveness need not be shown. Id. Generally, a presumption of vindictiveness may arise when the State adds more serious charges after a defendant successfully appeals a conviction, or successfully seeks and obtains a mistrial because of the violation of a defendant's statutory or constitutional rights during trial. See id. at 11.

Here, the State successfully moved to amend the charging information after Shamblin's first trial resulted in a hung jury. We squarely held in Sisson that a mistrial resulting from a hung jury is not the result of a defendant's exercise of a statutory or constitutional right and that there is no presumption of prosecutorial vindictiveness when

4

the State adds charges to an information following a hung jury mistrial. Id. at 11-12; see also Harris v. State, 481 N.E.2d 382, 385-86 (Ind. 1985) (same). Sisson and Harris plainly apply to the facts here. The fact that Shamblin's first trial resulted in a hung jury placed no limitation on the State's ability to thereafter amend the charging information. Furthermore, we observe that the State's motion to amend after the first trial was precisely identical to its failed motion to amend before that trial. Amendment of an information before trial is presumptively valid and not vindictive. Johnson, 959 N.E.2d at 342. This was not a situation in which the State waited until after the first trial to add the new charge; it had previously attempted to do so and that attempt was presumptively valid.

Shamblin also argues that the State's amendment was in response to his refusal to plead guilty and to insist upon a jury trial. He notes that there was apparently no new evidence between the time of the original charging information and the later amendment that would explain why the State waited so long to add the new charge. The United States Supreme Court, however, has directly held that such facts do not establish the existence of prosecutorial vindictiveness in a charging decision. In Bordenkircher v. Hayes, 434 U.S. 357, 362, 98 S. Ct. 663, 667 (1978), the Court held that the government was not precluded from amending an indictment to add more serious charges after the defendant had refused to plead guilty, despite the fact that the prosecutor had not received any new evidence after the original indictment was filed. In U.S. v. Goodwin, 457 U.S. 368, 383, 102 S. Ct. 2485, 2493-94 (1982), the Court further held that there is no presumption of vindictiveness when a prosecutor adds more serious charges to an indictment after the defendant demands a jury trial. The Court observed:

5

> A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in Bordenkircher, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

Goodwin, 457 U.S. at 382, 102 S. Ct. at 2493. Additionally, "[t]o presume that every case is complete at the time an initial charge is filed, however, is to presume that every prosecutor is infallible—an assumption that would ignore the practical restraints imposed by often limited prosecutorial resources." Id. at 382 n.14, 102 S. Ct. at 2493 n.14.

Applying Bordenkircher and Goodwin to this case, it is clear that no presumption of vindictiveness arises from the fact that Shamblin refused to plead guilty, that he did not waive insistence upon his right to a jury trial, and that the prosecutor's decision to seek addition of the Class A felony charge did not arise from any newly discovered evidence. Shamblin would not have been precluded from attempting to present some evidence that the amendment was actually motivated by vindictiveness. See id. at 384, 102 S. Ct. at 2494. There is no such evidence. As such, the trial court did not abuse its discretion in allowing the amendment.

## II. Admission of Evidence

Shamblin next challenges the trial court's exclusion of certain evidence proffered by him. Specifically, Shamblin wanted to introduce a child abuse report prepared by a Department of Child Services ("DCS") worker, in which the worker quoted J.T.'s mother as saying that J.T. "does not always tell the truth and that she makes a lot of things up." Ex. A (not admitted). The report also quoted school personnel describing J.T. as

6

"manipulative and rude." Id. It also related J.T.'s diagnoses, as obtained from outside treatment records, of "Generalized Anxiety Disorder, Oppositional Defiant Disorder, and ADHD" and J.T.'s temporary residence in a "sexual maladaptive treatment resident facility." Id. The treatment was unrelated to Shamblin's actions. This report also substantiated that Shamblin had molested J.T.

Shamblin also wanted to introduce into evidence a deposition of another DCS caseworker, Regina Drummond, who had been involved with J.T. in matters unrelated to Shamblin. Drummond stated that "we assumed [J.T.], a lot of times, did not tell the truth," because things she said conflicted with things that her mother said. Ex. B, p. 9 (not admitted). However, Drummond could not recall specific occasions of J.T. directly being caught lying. Drummond also said that J.T. could be very difficult to deal with, mean-spirited, and retaliatory. Drummond mentioned an allegation, before Shamblin was accused of molesting J.T., that J.T. had been molested by an older teenage girl; although it is unclear whether this incident was officially substantiated or resulted in prosecution, J.T.'s mother believed that it had occurred.

We review rulings on the admission of evidence for an abuse of discretion. Jones v. State, 982 N.E.2d 417, 421 (Ind. Ct. App. 2013), trans. denied. An abuse of discretion occurs if a decision is clearly against the logic and effect of the facts and circumstances before the trial court or if it has misinterpreted the law. Heaton, 984 N.E.2d at 616. Errors in the admission of evidence are subject to harmless error analysis and will not require reversal unless an error has affected the substantial rights of a party. Wilkes v. State, 7 N.E.3d 402, 405-06 (Ind. Ct. App. 2014). An error is harmless if we are

7

convinced that a conviction is supported by such independent evidence of guilt that there is no substantial likelihood the challenged evidence contributed to the conviction. Id. at 406.

First, we note, as the State argues, that the challenged exhibits clearly were hearsay, relating out-of-court statements that Shamblin wanted admitted for the truth of the matter those statements contained—primarily, that J.T. has a propensity for lying. See Ind. Evidence Rule 801(c). Drummond in fact testified at trial and, thus, was an available witness. Her deposition testimony would not be considered hearsay under Evidence Rule 801(d)(1) if it was inconsistent with her trial testimony, or if it was consistent with her testimony and used to rebut a charge of recent fabrication or improper influence or motive, or it was an identification of a person shortly after perceiving the person. None of those exceptions apply here and her deposition clearly was hearsay. Shamblin makes no argument that any hearsay exception applied to any part of Drummond's deposition testimony.

As for the DCS report, it is textbook hearsay. It is double hearsay because it relates hearsay from J.T.'s mother, school officials, and third-party records. In such a case, each layer of hearsay must qualify as admissible under an exception to the hearsay rule. Teague v. State, 978 N.E.2d 1183, 1187 (Ind. Ct. App. 2012). Again, Shamblin makes no argument that any hearsay exceptions applied to the DCS report or the hearsay statements it contained. To delve into any more particulars on whether the deposition or DCS report were admissible hearsay would require us to effectively advocate on Shamblin's behalf, which we cannot do. See Wingate v. State, 900 N.E.2d 468, 475 (Ind. Ct. App. 2009)

8

(noting that all arguments on appeal must be supported by cogent reasoning or the argument is waived) (citing Ind. Appellate Rule 46(A)(8)).

Regardless of the application of the Rules of Evidence, Shamblin attempts to argue that exclusion of these exhibits impacted the ability to exercise his constitutional right to conduct cross-examination. "Trial courts have wide discretion to determine the scope of cross-examination, and a trial court's decision as to the appropriate extent of cross-examination will only be reversed for an abuse of discretion." McCorker v. State, 797 N.E.2d 257, 266 (Ind. 2003). This discretion must be balanced against a criminal defendant's right to confront witnesses against him or her under the Sixth and Fourteenth Amendments to the United States Constitution. Id.

Shamblin fails to identify any occasion in the transcript where the trial court limited his ability to conduct cross-examination of any witness. As noted, Drummond testified at trial and was available for examination. Shamblin did in fact call her as a witness and elicited testimony from her that there were frequent inconsistencies between what J.T. said and what her mother said. That is all that Shamblin attempted to elicit from Drummond; the trial court did not cut off his examination of her. Shamblin fails to explain why he could not have asked more questions of Drummond, fully paralleling her deposition testimony, if he had wanted to do so. The trial court's exclusion of Drummond's deposition did not impact his ability to exam Drummond at trial.

Similarly, Shamblin fails to explain how exclusion of the DCS report impacted his ability to examine or cross-examine any witness. For example, J.T.'s mother was not called as a witness by either the State or Shamblin. If Shamblin had wanted to elicit testimony

9

from J.T.'s mother regarding her alleged propensity for lying, he could have called her as a witness and examined her. Perhaps Shamblin feared that she might support J.T.'s version of events or disavow her statements in the DCS report about J.T.'s lying. But that is one of the very points of the hearsay rule, requiring a full picture of what a declarant believes while testifying under oath, and not just providing snippets of things he or she has said out-of-court in unsworn conversations.

Along the same lines, Shamblin has failed to demonstrate how he was prejudiced by exclusion of the exhibits. In addition to eliciting testimony from Drummond regarding the possibility of J.T.'s lying, Shamblin also elicited testimony from a CASA who was familiar with J.T. and who stated that J.T. had a reputation for lying. Shamblin also conducted extensive cross-examination of J.T. herself regarding that reputation and possible motives she might have had for wanting to implicate Shamblin. Additionally, to the extent Shamblin suggests that evidence of J.T.'s prior accusation of molestation against a teenage girl was admissible under Indiana's Rape Shield Law as embodied in Indiana Evidence Rule 412, we disagree. Although not expressly listed in Rule 412, there is a common law exception to introduction of a victim's past sexual conduct that permits introduction of a prior accusation if the victim has admitted that the accusation was false or if the accusation is demonstrably false. Fugett v. State, 812 N.E.2d 846, 849 (Ind. Ct. App. 2004). J.T. never admitted that the prior accusation was false and there is no evidence that it was demonstrably false. Although it is unclear whether the accusation led to prosecution or was officially substantiated, the only evidence is that J.T.'s mother believed the accusation to be true.

10

Shamblin has not established that exclusion of the DCS report and Drummond's deposition violated the Rules of Evidence or his constitutional rights. Moreover, he has not established any prejudice from their exclusion. The trial court did not abuse its discretion in excluding them.

### III. Sufficiency of the Evidence

We now address whether there is sufficient evidence to support Shamblin's conviction for Class A felony attempted child molesting. When we review a claim of insufficient evidence to support a conviction, we must consider only the evidence most favorable to the conviction and any reasonable inferences that may be drawn from that evidence. Baker v. State, 968 N.E.2d 227, 229 (Ind. 2012). We will affirm if a reasonable fact finder could determine from the evidence that the defendant was guilty beyond a reasonable doubt. Id. We will not reweigh the evidence or judge the credibility of witnesses. Id.

At the time of Shamblin's crime and trial, Indiana Code Section 35-42-4-3(a) provided that it was a Class A felony for a person over twenty-one years old to perform or submit to sexual intercourse or "deviate sexual conduct" with a child under fourteen years old. "Deviate sexual conduct" was defined as "an act involving: (1) a sex organ of one (1) person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." Ind. Code § 35-31.5-2-95 (2013).[2] A finger is an object

---

[2] Effective July 1, 2014, the phrase "deviate sexual conduct" has been replaced with the phrase "other sexual conduct" throughout the criminal code. See I.C. § 35-31.5-2-221.5. The actions described under the new statute are identical to the old statute.

under this statutory definition.  Stewart v. State, 555 N.E.2d 121, 126 (Ind. 1990), overruled

on other ground by Lannan v. State, 600 N.E.2d 1334 (Ind. 1992).

Shamblin argues that he had no sexual intent in his touching of J.T.'s vagina.  He

contends that J.T. did not testify that Shamblin's touching was sexual and also notes that

in his confession to police he claimed that he had no sexual interest in J.T.  Rather, he told

police he supposedly was simply "curious" about what a twelve-year-old's vagina was like

and was not sexually attracted to children.  Ex. 2.[3]  He correctly cites Bowles v. State, 737

N.E.2d 1150, 1152 (Ind. 2000), as saying, "Mere touching alone is not sufficient to

constitute the crime of child molesting.  The State must also prove beyond a reasonable

doubt that the act of touching was accompanied by the specific intent to arouse of satisfy

sexual desires."  However, Bowles was specifically addressing subsection (b) of Indiana

Code Section 35-42-4-3, which makes it a Class C felony for an adult to fondle or touch a

child with intent to arouse or satisfy the sexual desires of either the child or the adult.

Shamblin was convicted under subsection (a) of the child molesting statute for

attempting to perform deviate sexual conduct upon J.T. by trying to put his finger inside of

her vagina.  In addressing this part of the statute, criminalizing sexual intercourse or deviate

or other sexual conduct with a child, our supreme court has expressly held "that the

elements of the crime of child molesting under Ind. Code § 35-42-4-3(a) do not include the

intent to arouse or satisfy sexual desires."  D'Paffo v. State, 778 N.E.2d 798, 803 (Ind.

---

[3] At trial, Shamblin testified, contrary to his police confession, that he had simply attempted to adjust J.T.'s shorts while she was sitting on the couch next to him to cover up her vagina and had not attempted to put his finger inside of her.  Shamblin's police confession represents the evidence most favorable to the conviction.

12

2002).   In other words, "there [is] no element of sexual gratification in the crime of deviate sexual conduct."  Id. at 802 (citing Canaan v. State, 541 N.E.2d 894, 907 (Ind. 1989), cert. denied).  The court did acknowledge that, in cases involving legitimate medical examinations or personal hygiene-related procedures, there would be no criminal intent on the part of a defendant accused of child molestation.  Id.  In the absence of evidence that penetration of a child's sex organ was the result of a medical examination or personal hygiene, however, it is appropriate to sustain a defendant's Class A felony child molestation conviction regardless of whether there was any evidence of sexual intent on the defendant's part.  See id. at 802-03.

Here, both J.T.'s testimony and Shamblin's confession to police indicated that Shamblin attempted to put his finger inside of J.T.'s vagina and that he pushed hard enough that it hurt J.T.  There is no evidence that Shamblin did so for medical or hygienic reasons; his supposed mere "curiosity" about J.T.'s vagina was not an appropriate excuse for trying to put his finger inside of her.  Shamblin only had to intend to put his finger inside of J.T.; he did not have to intend to be aroused or to arouse J.T.  Even if we were to conclude that there was no evidence that Shamblin was aroused or intended to arouse J.T.—a point we do not admit—his conduct still falls within the prohibition of the child molesting statute. There is sufficient evidence to support his conviction for Class A felony attempted child molesting.[4]

### IV.  Sexually Violent Predator Finding

_____

[4] Shamblin makes no separate argument that there was insufficient evidence of an attempt under the general attempt statute.

13

Finally, Shamblin contends the trial court erred in finding him to be a sexually violent predator. A sexually violent predator finding requires Shamblin to register as a sex offender for the rest of his life, while some other sex offenders are only required to register for ten years after their release from prison. See I.C. § 11-8-8-19. The standard definition of "sexually violent predator" is one "who suffers from a mental abnormality or personality disorder that makes the individual likely to repeatedly commit a sex offense . . . ." I.C. § 35-38-1-7.5(a). Shamblin notes that there was no hearing to determine whether he fit within this definition and that he does not in fact fit within it, given his complete lack of criminal history and the absence of evidence that he suffers from a sexually-related mental abnormality or personality disorder.

As the State notes, however, Shamblin automatically is deemed to be a sexually violent predator because of the crime he committed. See Marlett v. State, 878 N.E.2d 860, 870 (Ind. Ct. App. 2007) (noting that convictions for certain crimes mandate an automatic sexually violent predator finding), trans. denied. Indiana Code Section 35-38-1-7.5(b) provides, among other possibilities, that a person is a sexually violent predator by operation of law if he or she commits attempted child molesting as a Class A felony and is released from prison or probation for the offense after June 30, 1994. Under the plain statutory language, the trial court had no choice but to find that Shamblin is a sexually violent predator. To the extent Shamblin argues that he does not really fall into that category, Indiana Code Section 35-38-1-7.5(g) permits some persons labeled a sexually violent predator to petition for reconsideration of that designation, not earlier than ten years after the person is released from prison or secure detention, or ten years after a trial court has

made a non-automatic sexually violent predator finding. Thus, Shamblin will have the opportunity in the future to plead his case that he is not a sexually violent predator.

## Conclusion

The trial court did not abuse its discretion in permitting the State to amend the charging information after Shamblin's first trial ended in a hung jury or in refusing to admit Shamblin's proffered evidence. There is sufficient evidence to support his conviction, and his sexually violent predator status is mandated by law. We affirm in all respects.

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.